SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-cr-00382-MO-02** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JOSHUA CLAY WILFONG,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 64 months' imprisonment, to be followed by a five term of supervised release.

The defendant was involved in running a large illegal drug operation responsible for the manufacture and distribution of hundreds of thousands of counterfeit M30 pills manufactured with fentanyl within the greater Portland/Vancouver area. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, the defendant's performance while on pretrial supervision, and the defendant's personal history and characteristics the government believes the requested sentence is both reasonable and justified.

**Government's Sentencing Memorandum** **Page 1**

**A.     Summary of Proceedings.**

On December 16, 2024, the defendant pled guilty to Count 1 of the Indictment which charged him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release.  There is a potential mandatory minimum sentence of ten years' imprisonment.  There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government believes the facts underlying the defendant's count of conviction (PSR ¶¶ 18 - 37), Sentencing Guideline calculations (PSR ¶¶ 42 - 51), and Criminal History (PSR ¶¶ 54 – 58) are accurately outlined in both the PSR and plea agreement.  In his plea agreement defendant admitted that:

> [B]eginning on or about September 23, 2021, the exact date being unknown, and continuing through October 12, 2022, within the District of Oregon, he, and other persons whose identities are known and unknown, did the following:
>
> The conspirators did knowingly and intentionally combine, conspire, confederate, and agree to distribute and possess with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance.
>
> In carrying out the conspiracy the defendant, conspiring with others, did the following:
>
> - It was part of this conspiracy for the co-defendant to obtain, including by traveling into Mexico, and transport the controlled substance fentanyl into the District of Oregon for purposes of further distribution.

///

**Government's Sentencing Memorandum**                                          **Page 2**

- It was part of this conspiracy for the defendant to possess, process, store, weigh, and package the controlled substance fentanyl within the District of Oregon for purposes of further distribution.

- It was part of this conspiracy for the defendant and others to use fentanyl to manufacture counterfeit M30 pills for purposes of further distribution.

- It was part of this conspiracy for the defendant and others to distribute the controlled substance fentanyl to other individuals within the District of Oregon and elsewhere.

- It was part of this conspiracy for the defendant and others to maintain premises, including a storage unit, for the purposes of storing, packaging, possessing, manufacturing, and distributing the controlled substance fentanyl.

Plea Agreement ¶ 6.

The defendant is out of custody on pretrial supervision and in compliance with his release conditions.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

The parties agree that defendant's relevant conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), includes approximately 3,318 grams of a mixture and substance containing a

///

detectable amount of fentanyl, for an initial Base Offense Level of 32.  PSR ¶ 42, Plea Agreement ¶ 8.

Based upon some fairly recent changes in the law, the government did not initially believe the defendant qualified for "safety valve relief."  Plea Agreement ¶ 9.  However, the U.S. Probation Office has determined he does.  Accordingly, because the defendant appears to satisfy the "safety valve" criteria in 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward departure in his Sentencing Guidelines. PSR ¶ 43, Plea Agreement ¶ 9.

Defendant does not qualify as a "Zero Point Offender," pursuant to USSG § 4C1.1.  PSR ¶ 57, Plea Agreement ¶ 10.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 49 - 50, Plea Agreement ¶ 11.

Prior to any additional departures or variances, the government believes defendant's initial Adjusted Offense Level is 27.  With a Criminal History Category of I, defendant's initial advisory sentencing guideline range would be 70 to 87 months' imprisonment.

Pursuant to 18 U.S.C. § 3553(a), defendant's qualification for "safety valve " relief, the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, defendant's successful performance on pretrial supervision, how the co-defendant and similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the

///

**Government's Sentencing Memorandum**                                    **Page 4**

case, the government will recommend that the Court to grant the defendant a two-level downward variance in his overall offense level. Plea Agreement ¶ 13.[1]

The government's additional two-level 3553(a) reduction would result in an Adjusted Offense Level of 25 and with a Criminal History Category of I, the defendant's advisory sentencing guideline range would be between 57 to 71 months' imprisonment.

### C.    Government's Recommended Sentence.

Pursuant to 18 U.S.C. § 3553(a) and as long as defendant demonstrates an acceptance of responsibility as explained above, and to account for the defendant's pending Oklahoma criminal matter that is noted in the PSR at paragraph 57, the parties will recommend that the Court impose a sentence of 18 months above what the Court determines to be the low-end of the defendant's otherwise applicable advisory sentencing guideline range, to be followed by a term of supervised release. *See* Plea Agreement ¶ 14.[2] In this case, the government asks the Court to impose a final sentence of 64 months' imprisonment, to be followed by a five year term of supervised release.

///

///

---

[1]    If the defendant did not qualify for "safety valve" relief the government would then have asked the Court to grant the defendant a four-level reduction to account for that. Plea Agreement ¶¶ 9, 14.

[2]    Defendant currently has a pending state case in Canadian County, Oklahoma, Case No. Case #: CF-2019-393. In 2020, defendant was convicted of trafficking in illegal drugs (marijuana) and received a six year suspended sentence. His criminal conduct that gave rise to this federal case is a violation of his suspended sentence in that Oklahoma case. The Canadian County District Attorney's Office is willing to forgo further prosecution of defendant in their jurisdiction if the Court adds 18 months to the sentence it would otherwise impose for defendant's criminal conduct in this federal case. Plea Agreement ¶ 14.

**Government's Sentencing Memorandum**                                      **Page 5**

The government has recently received some additional mitigation information from the defendant and will review those materials prior to sentencing.  Should our recommendation change, we will advise the Court.

The defendant was involved in manufacturing and distributing large amounts of fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community. According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024).  In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses.  *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023).  Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.  *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023).  In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths.  OREGON HEALTH AUTHORITY OREGON

DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024).  In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl.  *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025).  In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."  *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon.  *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show.");  *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

**Government's Sentencing Memorandum**                                         **Page 7**

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 64 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

There are no charges to be dismissed.

There is an appeal waiver.

Dated: May 6, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney

**Government's Sentencing Memorandum**                    **Page 8**